# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
Filed: November 27, 2018

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * | | UNPUBLISHED |
| KAVITA DESAI, | * | |
| | * | No. 14-811V |
| Petitioner, | * | |
| v. | * | Special Master Gowen |
| | * | |
| SECRETARY OF HEALTH | * | Attorneys' Fees and Costs; Interim |
| AND HUMAN SERVICES, | * | Award; Adjusted Attorney Rates; |
| | * | Life Care Planner; Vague Entries; |
| Respondent. | * | Travel Time. |
| * * * * * * * * * * * * * * * * * | | |

Richard Gage, Richard Gage, P.C., Cheyenne, WY, for petitioner.
Camille M. Collett, United States Department of Justice, Washington, DC for respondent.

## DECISION ON INTERIM ATTORNEYS' FEES AND COSTS[1]

On September 7, 2018, Kavita Desai ("petitioner") filed a motion for interim attorneys' fees and costs. Petitioner's Interim Application ("Pet. Int. App.") (ECF No. 124).[2] For the reasons discussed below, the undersigned **GRANTS** petitioner's motion. I hereby award **$80,530.97** in *interim* reasonable attorneys' fees and costs and **$7,184.90** in *interim* reasonable petitioner's costs.

### I.    Procedural History

On August 26, 2013, petitioner contacted the current counsel of record, Richard Gage, regarding filing a claim in the National Vaccine Injury Compensation Program (hereinafter the "Vaccine Act" or "Vaccine Program").[3]  After formally retaining said counsel and obtaining

---

[1] Pursuant to the E-Government Act of 2002, *see* 44 U.S.C. § 3501 note (2012), **because this decision contains a reasoned explanation for the action in this case, I intend to post it on the website of the United States Court of Federal Claims.** The court's website is at http://www.uscfc.uscourts.gov/aggregator/sources/7.  Before the decision is posted on the court's website, each party has 14 days to file a motion requesting redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b).  "An objecting party must provide the court with a proposed redacted version of the decision." *Id.* **If neither party files a motion for redaction within 14 days, the decision will be posted on the court's website without any changes.** *Id.*

[2] The attorneys' fees and costs application contains "Tabs A – H." However, those are not individually Bates-stamped with the tab and the page number. Thus, citations to the attorneys' fees and costs application will be to the page numbers generated by the CM/ ECF filing system, which are displayed on the top of the document.

[3] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-10 to 34 (2012)

preliminary medical records, she filed a petition on September 4, 2014. Petition (ECF No. 1). Petitioner avers that on November 15, 2012, she received an influenza ("flu") vaccination at Jacobi Medical Center in New York, New York. Petitioner further avers that she received the vaccination in her right shoulder area. She avers that as a result of this vaccination, she suffered an inflammatory response that caused adhesive capsulitis of her right shoulder with residual effects lasting for more than six months. Petition at ¶¶ 2-4.

Petitioner's claim was initially assigned to the Office of Special Masters's Special Processing Unit ("SPU"). Notice of Assignment (ECF No. 4). The parties and the Court recognized certain difficulties related to obtaining medical records and other evidence relevant to petitioner's claim. Namely, petitioner grew up in India, where she completed college and medical school. From March 2000 – December 2012, petitioner was employed as a clinical researcher at several medical centers in New York.[4] She received the vaccine in New York on November 15, 2012 and was naturalized as a United States citizen on December 14, 2012.[5] Shortly thereafter, she traveled to India to attend to family obligations. The preliminary medical records reflected that petitioner received physical therapy and possibly other treatment while she was in India. Petitioner was directed to obtain those records. Based in part on this unique fact pattern involving evidence located outside of the United States, the claim was reassigned to the undersigned special master on October 20, 2014. Notice of Reassignment (ECF No. 12).

On November 20, 2014, I had an initial status conference. Petitioner's counsel stated that she received the vaccine in her dominant right arm because bloodwork had already been taken from her non-dominant left arm during the same medical appointment. Scheduling Order entered on November 20, 2014 (ECF No. 15).

On December 10, 2014, respondent filed a status report indicating that he would not concede petitioner's claim as a case of Shoulder Injury Related to Vaccine Administration ("SIRVA"). Respondent noted that the contemporaneous medical record provides that the flu vaccine was given in the left deltoid. Respondent also noted that the first medical records of petitioner's right shoulder injury were approximately three months after the vaccination. Respondent averred that if the Court resolved these factual disputes, respondent would be willing to enter into settlement negotiations based on litigative risk. Status Report (ECF No. 16).

Respondent requested that petitioner file records of the bloodwork or a statement of unavailability. Status Report (ECF No. 16). The undersigned confirmed that petitioner should do so. Scheduling Order (Non-PDF) entered December 18, 2014.

On January 28, 2015, petitioner filed a one-page record from petitioner's primary care provider displaying that that on November 15, 2012 - the day petitioner received the flu vaccination – petitioner had a "routine follow up and health screening," also described as a "routine general medical examination." Pet. Ex. 11. This record did not confirm or rule out that

---

(hereinafter "Vaccine Act" or "the Act"). Hereinafter, individual section references will be to 42 U.S.C. § 300aa of the Act.

[4] *See* Petitioner's Exhibit ("Pet. Ex.") 23 (filed later in the proceedings).

[5] Pet. Ex. 17 (filed later in the proceedings).

petitioner underwent bloodwork on that day.  During a status conference on February 20, 2015, the undersigned granted petitioner additional time to obtain any other records, after which petitioner should convey a demand to respondent.  Order (ECF No. 19).

On April 21, 2015, petitioner filed a status report indicating that no other records existed from the date of vaccination.  Status Report (ECF No. 20).  Petitioner conveyed a demand to respondent on May 22, 2015.  Order (ECF No. 22); Status Report (ECF No. 23).  On June 25, 2015, respondent indicated that a litigative risk settlement was not possible and that the case should be placed on the litigation track.  Status Report (ECF No. 24).

During a status conference on August 11, 2015, the parties requested and I agreed to schedule a fact hearing.  I also directed petitioner to verify that all medical records and insurance records from the date of vaccination were filed, in the interest of determining whether petitioner underwent blood work on that same date.  Order (ECF No. 26).

On September 14, 2015, petitioner filed a status report indicating that she had filed all medical records from the date of vaccination.  Petitioner did not address whether or not any insurance records existed.  She requested time to obtain additional records of her medical care in India.  Status Report (ECF No. 27).  On January 19, 2016, petitioner filed records from her initial post-vaccination physical therapy course, which began on February 27, 2013.  Pet. Ex. 12.

I then scheduled a one-day fact hearing to take place in May 2016.  Order (ECF No. 28).  Petitioner filed additional records of her medical care in India.  Pet. Ex. 13.  Afterwards, to accommodate for petitioner's family obligations, the fact hearing was rescheduled to November 2016.  Order (ECF No. 33).

On March 2, 2016, respondent's counsel communicated that she had "authority to resolve this case on a litigative risk basis."  She requested that petitioner file supporting documentation for her demand.  Status Report (ECF No. 34).  The parties began working to resolve the matter informally.  In September 2016, the parties and the undersigned agreed to cancel the November 2016 hearing date in hopes of resolving the case based on litigative risk.

Several topics complicated the litigative risk discussions.  First, petitioner sought future medical expenses.  She retained a life care planner who reviewed the available medical records and an interview with the petitioner.  The life care planner submitted a report opining on what petitioner's stated future medical costs would cost without health insurance in New York (although since the vaccination, petitioner has lived primarily in India).  Pet. Ex. 15.

Additionally, petitioner also raised a claim for significant lost wages.  While she had been working as a clinical researcher in New York for 12 years prior to the vaccination, she emphasized that she had previously obtained a medical degree in India.  She averred that she had planned to obtain a medical degree and practice medicine in the United States, and claimed lost wages based on the same.

On February 7, 2017, petitioner again requested a hearing.  Status Report (ECF No. 58).  Following a status conference on February 21, 2017, I agreed to schedule a hearing for July 17-18, 2018, to cover both entitlement and damages.  Order (ECF No. 59).

During the next status conference on May 10, 2017, I stated that the parties should make further efforts to informally resolve this case. I directed petitioner to submit a demand excluding lost wages, instead limited to pain and suffering and the costs of future medical care. Order (ECF No. 65). The parties further discussed the possibility of settlement but confirmed that they wanted to proceed to a hearing. Status Reports (ECF Nos. 80, 85, 87); Order (ECF No. 88).

During a status conference on January 29, 2018, I offered to either to issue an opinion on entitlement or proceed to a hearing. Respondent requested to file a Rule 4(c) report prior to the issuance of an opinion on entitlement. Respondent did so on February 23, 2018. Respondent's Report ("Resp. Rept.") (ECF No. 93). I determined to proceed to a hearing. Scheduling Order entered March 19, 2018 (ECF No. 95). Respondent retained an expert orthopedist and a life care planner. Resp. Exs. A, C.

At this point, petitioner had continued to reside primarily in India to attend to her family obligations. From April 30, 2018 to May 31, 2018, she was in New York for appointments with her orthopedist and with the parties' life care planners. *See* Pet. Int. App. at 121, 127; Pet. Exs. 29, 30; Resp. Ex. C. During this period, petitioner's counsel communicated with her and her counsel but counsel did not travel to New York. Pet. Int. App. at

In July 2018, petitioner returned to the United States in connection with the hearing. She flew to New York, where she personally obtained an additional three-page record from Jacobi Medical Center. This record provided that on date of vaccination, she also underwent bloodwork and an echocardiogram. Pet. Ex. 35 (providing that the record was printed on July 12, 2018).[6]

I held pre-hearing status conferences with counsel on July 11 and July 12, 2018. Scheduling Order (ECF No. 112). A hearing on entitlement and damages took place in Washington, D.C. on July 17 – 18, 2018. Petitioner provided fact testimony. Petitioner and respondent presented testimony from their respective life care planners. Respondent presented the testimony of her orthopedics expert. Transcript (ECF Nos. 121-22). I concluded that petitioner did in fact receive the vaccination in her right arm and that onset began approximately one to two hours after the vaccination. Tr. 301-02. I did not see evidence of an alternative cause for her right shoulder injury presented by MRIs, EMGs, or other medical records. Tr. 302. I gave petitioner the option to submit an expert's report responding to respondent's orthopedics expert. Tr. 303; Scheduling Order entered July 18, 2018 (ECF No. 119).[7]

---

[6] This is contrary to petitioner and her counsel's several past representations that there were no additional records from the date of vaccination.

[7] Petitioner has not yet filed an expert report. Her original deadline was September 4, 2018. Post-Hearing Order (ECF No. 119). On that deadline, she filed an unopposed motion requesting an extension of forty-five (45) days, to October 19, 2018. Petitioner's Motion (ECF No. 123), granted by Non-PDF Order entered on September 4, 2018. Petitioner did not file the expert report by the amended deadline of October 19, 2018. The undersigned's law clerk emailed petitioner's counsel, copying respondent's counsel, to note the missed deadline. *See* Informal Communication entered October 23, 2018. On October 30, 2018, petitioner filed a second unopposed motion for extension of time, in which she requested an additional thirty (30) days, until November 19, 2018. Petitioner's Motion (ECF No. 126), granted by Order entered on October 31, 2018 (ECF No. 127). Petitioner again missed the deadline to file her expert report. To date, this has not been received.

I also directed petitioner to eliminate several items from her life care plan. Tr. 302.
Petitioner's counsel indicated that they were not open to settling the case because they were
seeking a significant award for pain and suffering. Thus, I set deadlines for post-hearing
briefing. Tr. 302-04; Scheduling Order (ECF No. 119).

On September 7, 2018, petitioner filed the instant motion for an interim award of
reasonable attorneys' fees and costs. Pet. Int. App. (ECF No. 124). She requests $68,970.48 in
attorneys' fees and $32,578.19 in attorneys' costs, for a total attorneys' fees and costs request of
$101,548.67. *Id.* at 4. Petitioner also requests reimbursement for $7,184.90 in costs which she
has personally incurred during the prosecution of this claim. Id. at 4, 126-56.

On September 19, 2018, respondent filed a response to petitioner's application for interim
attorneys' fees and costs. Respondent's Response (ECF No. 125). "Respondent defers to the
special master to determine whether or not petitioner has met the legal standard for interim
attorneys' fees and costs award, as set forth in *Avera v. Secretary of Health and Human Services*,
515 F.3d 1345 (Fed. Cir. 2008)." *Id.* at 2. "Respondent leaves it to the special master's
discretion to determine whether the statutory requirements for an award of attorneys' fees and
costs are met in this case." *Id.* (citing Vaccine Act, Section 15(e)(1)(A)-(B)). Petitioner has not
filed a reply. Thus, this matter is now ripe for review.

## II.   Entitlement to Attorneys' Fees and Costs

### A.  General Legal Standard

The Vaccine Act provides that reasonable attorney's fees and costs "shall be awarded"
for a petition that results in compensation. §15(e)(1)(A)-(B). Even when compensation is not
awarded, reasonable attorneys' fees and costs "may" be awarded "if the special master or court
determines that the petition was brought in good faith and there was a reasonable basis for which
the claim was brought." § 15(e)(1). The Federal Circuit has reasoned that in formulating this
standard, Congress intended "to ensure that vaccine injury claimants have readily available a
competent bar to prosecute their claims." *Cloer v. Sec'y of Health & Human Servs.*, 675 F.3d
1358, 1362 (Fed. Cir. 2012). In this case, respondent has not raised any specific objections
regarding the good faith and reasonable basis of this claim. Additionally, respondent was willing
to enter into litigative risk discussions at several points of the case. In light of respondent's
conduct and my full review of the evidence and petitioner's credible testimony at the July 2018
hearing, I find that the good faith and reasonable basis requirements for pursuing the claim this
far have been met.

### B.  Interim Awards

Section 15(e) of the Vaccine Act permits an award of reasonable attorneys' fees and
costs. In addition, the Vaccine Act permits interim attorneys' fees and costs. *See Avera*, 515
F.3d at 1352; *Shaw v. Sec'y of Health & Human Servs.*, 609 F.3d 1372 (Fed. Cir. 2010). When a
petitioner has yet to prove entitlement, the special master may grant an interim award of
reasonable attorneys' fees and costs if the special master "determines that the petition was
brought in good faith and there was a reasonable basis for the claim." § 15(e)(1)(B); *Sebelius v.*

*Cloer*, 133 S. Ct. 1886, 1893 (2013). I find that this claim was brought in good faith and on a reasonable basis.

In *Shaw,* the Federal Circuit held that it was proper to grant an interim award when "*the claimant* establishes that the cost of litigation has imposed an undue hardship." 609 F.3d at 1375 (emphasis added). In *Avera,* the Federal Circuit stated that "[i]nterim fees are particularly appropriate in cases where proceedings are protracted and costly experts must be retained." 515 F.3d at 1352. I do not routinely grant interim fee applications. I generally defer ruling on an interim fee application if: the case has been pending for less than 1.5 years (measured from the date of filing); the amount of fees requested is less than $30,000; and/ or the aggregate amount of expert costs is less than $15,000. If any one of these conditions exists, I generally defer ruling until these thresholds are met or until an entitlement hearing has occurred. These are, however, only informal requirements, and there ultimately are many factors bearing on the merit of an interim fee application. I evaluate each one on its own merits.

In the present case, petitioner has not provided any reasoning to support her request for an interim award. However, her request does surpass the threshold amounts for attorneys' fees and for expert costs. The claim has also been pending for over four years. A hearing on entitlement and damages has taken place. However, I am allowing petitioner the opportunity to retain an expert to respond to the orthopedist retained by respondent. Additionally, the case will need to be briefed and adjudicated, which may take several additional months. Thus, it is appropriate to award petitioner interim attorneys' fees and costs due to the substantial expert expenses and the protracted nature of the case.

## III.    Reasonable Attorneys' Fees and Costs

### A.  Legal Standard

As stated above, the Vaccine Act only authorizes "reasonable" attorneys' fees and costs. The Federal Circuit has approved use of the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. *Avera,* 515 F.3d at 1349. Using the lodestar approach, a court first determines "an initial estimate of a reasonable attorneys' fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Id.* at 1347-58 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). Then, the court may make an upward or downward departure from the initial calculation of the fee award based on other specific findings. *Id.* at 1348. Although not explicitly stated in the statute, the requirement that only reasonable amounts be awarded applies to costs as well as to fees. *See Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994).

Special masters have "wide discretion in determining the reasonableness of both attorneys' fees and costs." *Hines v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 753 (1991). They may look to their experience and judgment to reduce the number of hours billed to a level they find reasonable for the work performed. *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993). A line-by-line evaluation of the billing records is not required. *Wasson v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 482, 483 (1991), *aff'd in relevant part*, 988 F.2d 131 (Fed. Cir. 1993 (per curiam).

Petitioner "bea[rs] the burden of establishing the hours expended, the rates charged, and the expenses incurred" are reasonable.  *Wasson*, 24 Cl. Ct. at 484.  Adequate proof of the claimed fees and costs should be presented when the motion is filed.  *Id.* at 484 n. 1.  Counsel "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission."  *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

## B.  Hourly Rates

Petitioner requests the following rates for the following individuals involved in the case:

|  | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 |
|---|---|---|---|---|---|---|
| *Attorneys* |  |  |  |  |  |  |
| **Richard Gage** | $294.86 | $299.64 | $300 | $382.50 | $391 | $404 |
| **Kristen Blume** | -- | -- | -- | -- | $358 | $358 |
| *Paralegals* |  |  |  |  |  |  |
| **Susan McNair** | $112 | $112 | $120 | $120 | $120 | $120 |
| **Brian Vance** | -- | $112 | $120 | $120 | $120 | $120 |
| **Helen Nelson** | $112 | $112 | -- | -- | -- | $112 |
| **Kara Sutton** | $112 | -- | -- | -- | -- | -- |
| **Fred Hurlbert** | -- | $112 | -- | -- | -- | -- |

Pet. Int. App. at 57-93.  Petitioner does not provide any reasoning, affidavits, case citations, or other evidence in support of these rates.

I have previously evaluated whether Mr. Gage and other individuals at his firm located in Cheyenne, Wyoming, should receive "local" or "forum" rates.  I have concluded that the firm should receive local rates.  *Onikama v. Sec'y of Health & Human Servs.*, No. 15-1348V, 2017 WL 1718797 (Fed. Cl. Spec. Mstr. Apr. 3, 2017); *see also Briggs v. Sec'y of Health & Human Servs.*, No. 15-737V, 2018 WL 3991261, *3 (Fed. Cl. Spec. Mstr. June 26, 2018); *Hough v. Sec'y of Health & Human Servs.*, No. 15-1008V, 2018 WL 1310860 (Fed. Cl. Spec. Mstr. Feb. 13, 2018).

On July 9, 2018, another petitioner filed a motion for final attorneys' fees and costs including a brief argument that the Gage firm should be awarded forum rates.  This motion did not acknowledge my reasoned opinion in <u>Onikama</u> – or to that matter, other reasoned opinions by other special masters declining to award the Gage firm forum rates.  In that matter, I denied petitioner's request for forum rates based on the lack of any new evidence or reasoning.  *Hendrickson v. Sec'y of Health & Human Servs.*, No. 15-812V, -- WL ---- (Fed. Cl. Spec. Mstr. November 26, 2018).

The *Hendrickson* motion was pending when petitioner filed the instant application for interim attorneys' fees and costs in this case.  For the same reasoning provided in *Hendrickson*, petitioner's request for in-forum/ increased rates for the Gage firm is denied.

I have previously set reasonable local rates for the years in question for Mr. Gage and Ms. Blume. *See Onikama*, 2017 WL 1718797; *Hough*, 2018 WL 1310860; *Briggs*, 2018 WL 3991261. Their rates will be reduced to correspond with my previous decisions. The paralegals' rates are reasonable and already consistent with my previous decisions. Accordingly, the following rates will be awarded:

|  | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 |
|---|---|---|---|---|---|---|
| *Attorneys* | | | | | | |
| **Richard Gage** | $294.86 | $299.64 | $300 | $311 | $318 | $326 |
| **Kristen Blume** | -- | -- | -- | -- | $251 | $251 |
| *Paralegals* | | | | | | |
| **Susan McNair** | $112 | $112 | $120 | $120 | $120 | $120 |
| **Brian Vance** | -- | $112 | $120 | $120 | $120 | $120 |
| **Helen Nelson** | $112 | $112 | -- | -- | -- | $112 |
| **Kara Sutton** | $112 | -- | -- | -- | -- | -- |
| **Fred Hurlbert** | -- | $112 | -- | -- | -- | -- |

Applying these rates lowers the fee request by $8.190.94.

### C.  Hours Expended

As previously noted, a line-by-line evaluation of the fee application is not required and will not be performed. *Wasson*, 24 Cl. Ct. at 484. Rather, I may rely on my experience to evaluate the reasonableness of hours expended. *Id.* Just as "[t]rial courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorney fee requests …. [v]accine program special masters are also entitled to use their prior experience in reviewing fee applications." *Saxton*, 3 F.3d at 1521.

From 2013 to September 7, 2018, Mr. Gage has expended 153 hours on this matter. Pet. Int. App. at 57-71. His associate Ms. Blume has expended 0.4 hours. *Id.* at 73. Among the paralegals, 70.8 hours have been entered by Ms. McNair; 38.7 hours by Mr. Vance; 0.6 hours by Ms. Nelson; 2.2 hours by Ms. Sutton; and 0.4 hours by Mr. Hurlburt. *Id.* at 75-93.

Petitioner has also provided one chronological list of the entries from all individuals above, which is helpful while evaluating whether the total hours expended are reasonable. Pet. Int. App. at 6-53. Further discussion of the hours expended will cite to this section of the interim fee application.

The first issue is that in March 2016, Mr. Gage entered 0.9 hours and his paralegal Mr. Vance entered 3.5 hours related to preparation of an interim fee application. Pet. Int. App. at 21. I am not inclined to award these costs. Petitioner's counsel is obligated to keep contemporaneous records of their fees and costs. However, I do not see a clear reason why they would have taken additional time and planned to file an interim application in March 2016, when the case had only been pending for approximately 1.5 years. This was before petitioner incurred any significant costs such as retaining her life care planner and traveling to the United States. *See id.* at 118, 127. Additionally, it does not appear that starting the interim fee application saved time later on. In August 2018, Mr. Vance "started" the interim application and entered 8.8

hours on it, and Mr. Gage entered 1.0 hours to review. *Id.* at 52-53. Thus, the time spent preparing an interim fee application in March 2016 will not be awarded.

Additionally, I have previously criticized the Gage firm's practice of billing for numerous internal conferences about a claim without providing further information. I found this to be one justification for discounting the fee award overall. *Hough*, 2018 WL 1310860, at *3. Other special masters have done the same. *See, e.g., Mack v. Sec'y of Health & Human Servs.*, No. 15-149V, 2017 WL 5108680, *5 (Fed. Cl. Spec. Mstr. Sept. 28, 2017) (collecting cases). However, the Gage firm has continued this practice. The instant interim fee application contains approximately one hundred entries for vague "conferences" and "office meetings." Many, if not the majority, of these entries, contain no further information regarding what was discussed. This practice is too vague for the Court to evaluate.

The same criticism applies to the various entries regarding records requests, which were generally made by paralegals Susan McNair and Brian Vance. These are vague in that they do not specify which records were being requested. In this particular case, respondent and I made several requests for additional documentation for petitioner's claim. For example, as early as December 2014, respondent requested that petitioner file any records documenting that she underwent bloodwork at Jacobi Medical Center on the date of vaccination. Status Report (ECF No. 16). There do not appear to be any specific billing entries mentioning Jacobi Medical Center or bloodwork. Petitioner's counsel subsequently represented that all available records from the date of vaccination had been obtained. But in July 2018, shortly before the hearing, petitioner was able to personally obtain records of said bloodwork. Pet. Ex. 35. Based on the billing entries before me, it is difficult to evaluate whether petitioner's counsel did in fact request the bloodwork records at earlier stages in the case. The same criticism would go to requests for other records, such as from providers in India. It is important to identify which records are being requested, for later review of how the case progressed. Counsel is directed to make more specific entries regarding records requests going forward.

Based on these issues, I hereby apply a 5% deduction to the fees billed to date. This results in a deduction of $3,038.97.

### D. Attorneys' Costs

Like attorneys' fees, a request for reimbursement of costs must be reasonable. *Perreira*, 27 Fed. Cl. 29, 34. In this case, petitioner's counsel requests a total of $32,053.19. This includes reimbursement for the filing fee, obtaining medical records, postage, and counsel's travel and accommodations for the July 2018 hearing. In general, those costs are adequately documented and reasonable. Pet. App. at 95-117.[8]

---

[8] I will note, however, that the receipt for counsel's airfare to and from Washington, DC for the July 2018 was copied poorly and is therefore difficult to read. Pet. App. at 108-110. I will award the requested airfare cost, but I am not inclined to do so in the future. Counsel shall be sure to submit fully legible receipts going forward. If counsel does not do so, I may deny the requested costs in part or completely.

Petitioner's counsel also requests payment of fees and costs incurred to date by her life care planner, Helen Woodard, M.A., of ReEntry Rehabilitation Services, Inc., located in Lakewood, Colorado.  Pet. App. at 96, 118-23.  The Vaccine Program's reasonableness standards for attorneys' fees and costs apply equally to experts' fees and costs.  *Baker v. Sec'y of Health & Human Servs.*, No. 99-653V, 2005 WL 589431, *1 (Fed. Cl. Spec. Mstr. Feb. 24, 2005).  The same lodestar method is used to determine a reasonable award of compensation to the expert.  *Simon v. Sec'y of Health & Human Servs.*, No. 05-914V, 2008 WL 623833, at *1 (Fed. Cl. Spec. Mstr. Feb. 1, 2009); *Kantor v. Sec'y of Health & Human Servs.*, No. 01-679V, 2007 WL 1032378, at *4-8 (Fed. Cl. Spec. Mstr. March 21, 2007).

Ms. Woodard requests an hourly rate of $225.00 for work performed from 2016 – 2018. Pet. App. at 118-23.  She has been previously awarded this rate for work in the Vaccine Program.  *Rojas v. Sec'y of Health & Human Servs.*, No. 14-1220V, 2017 WL 6032300 (Fed. Cl. Spec. Mstr. April 5, 2017); *see also Quackenbush-Baker v. Sec'y of Health & Human Servs.*, No. 14-1000V, 2018 WL 4090640 (not expressly discussing the expert rate).  I agree that this rate is reasonable and should be awarded in the instant case.

Ms. Woodard requests reimbursement for 123.17 hours expended on this matter from August 2016 to July 2018.  Pet. App. at 118-23.  This is unreasonable for several reasons.

First, she made numerous vague entries for research.  One entry provides "general research re: DASH."  Two entries provide "general research re: health insurance in New York." Over forty additional entries simply provide "general research" or "life care plan research re: costs."  Pet. App. at 118-23.  In total, these entries come to 56.42 hours.  It may be necessary and reasonable for a life care planner to conduct research on various topics in connection with a petitioner's vaccine injury claim.  However, the life care planner should describe what they are doing with specificity.  For example, a notation that the expert "researched cost of EMG/ nerve conduction studies in Bronx, NY" is more informative than a notation of "research re: costs." Such additional information is necessary for the Court to evaluate whether the expert's work was reasonable and not duplicative.  In the present case, I will compensate only 50% of Ms. Woodard's research costs.  This results in a deduction of $5,982.85.

Second, Ms. Woodard has billed her normal rate of $225 per hour for a total of 23.25 hours spent traveling.  The Vaccine Program consistently awards travel time at 50% of a professional's regular billing rate.  *Hocraffer v. Sec'y of Health & Human Servs.*, No. 99-533V, 2011 WL 3705153, at *24 (Fed. Cl. Spec. Mstr. July 25, 2011); *see also O'Neill v. Sec'y of Health & Human Servs.*, No. 08-243V, 2015 WL 2399211, at *18-19 (Fed. Cl. Spec. Mstr. April 28, 2015) (reducing a life care planner's rate for travel time).  Chief Special Master Dorsey has previously critiqued Ms. Woodard for billing travel at her full rate has and reduced her compensation accordingly.  *Rojas*, 2017 WL 6032300, *13-14.  I will do the same here.  This results in a deduction of $2,615.63.

Petitioner's counsel is **ORDERED** to convey a copy of this decision to Ms. Woodard to ensure that she is aware of these critiques and to avoid repeating them in the future (both in this case and in others in the Vaccine Program).

### E. Petitioner's Costs

The Vaccine Program also reimburses reasonable costs which the petitioner personally incurred in support of the prosecution of his or her claim.[9]  In this case, petitioner requests reimbursement for interim costs totaling $7,184.90.  Pet. App. at 126-56.  These costs are for traveling from her current residence in India to the United States twice.  First, in July 2018, she traveled to New York to meet with her treating orthopedist and with the parties' life care planners.

Petitioner traveled to the United States again in July 2018.  She flew from India to New York, where she personally obtained a missing medical record confirming that she underwent bloodwork and an EKG on the same date of the vaccination.  Pet. Ex. 35 (providing that the record was printed on July 12, 2018).  She then traveled to Washington, DC for the entitlement hearing on July 17-18, 2018.  After the hearing, she traveled back to New York, then to India.  These costs are sufficiently documented.  In my estimation, they were generally necessary for petitioner to personally advance the claim, meet with the experts, and testify in person at the hearing.  They are reasonable and will be awarded without adjustment.

## IV.    Conclusion

In accordance with the foregoing, petitioner's application for interim attorneys' fees and costs is **GRANTED**.  I find that she is entitled to the following reasonable attorneys' fees and costs:

| | |
|---|---|
| Attorneys' Fees Requested: | $68,970.48 |
| Reduction to rates: | -$8,190.94 |
| Reduction for Mr. Gage – unfiled interim fee application: | -$279.90 |
| Reduction for Mr. Vance – unfiled interim fee application: | -$420.00 |
| Reduction for additional billing issues (5%) | - $3,038.97 |
| **Interim Attorneys' Fees Awarded:** | **$57,075.66** |
| | |
| Attorneys' Costs Requested: | $32,053.19 |
| Reduction for life care planner's vagueness: | - $5,982.25 |
| Reduction for life care planner's travel time: | - $2,615.63 |
| **Interim Attorneys' Costs Awarded:** | **$23,455.31** |
| | |
| **Interim Attorneys' Fees and Costs Awarded:** | **$80,530.97** |
| | |
| **Interim Petitioner's Costs Awarded:** | **$7,184.90** |

---

[9] However, the undersigned does not encourage this practice.  Rather, the undersigned encourages counsel to incur any such costs and then seek reimbursement from the Court.

Accordingly, I award the following:

1)   **A lump sum in the amount of $80,530.97, representing reimbursement for *interim* attorneys' fees and costs, in the form of a check payable jointly to petitioner and her counsel, Richard Gage of Richard Gage, P.C.**

2)   **A lump sum in the amount of $7,184.90, representing reimbursement for *interim* petitioner's costs, in the form of a check payable solely to petitioner.**

In the absence of a motion for reconsideration or review filed pursuant to RCFC Appendix B, the Clerk of the Court is directed to enter judgment forthwith.[10]

**IT IS SO ORDERED.**

**s/Thomas L. Gowen**
Thomas L. Gowen
Special Master

---

[10] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' separate or joint filing of a notice renouncing their right to seek review.