# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS

Filed: December 18, 2020

```
* * * * * * * * * * * * * * * * * * * *
KAVITA DESAI,                    *              PUBLISHED
                                 *
                                 *              No. 14-811V
                    Petitioner,  *
v.                               *              Special Master Gowen
                                 *
                                 *              Motion for Reconsideration;
SECRETARY OF HEALTH              *              Vaccine Rule 10(e)(1); Ruling on
AND HUMAN SERVICES,              *              Damages.
                                 *
                    Respondent.  *
* * * * * * * * * * * * * * * * * * * *
```

*Richard Gage,* Richard Gage, P.C., Cheyenne, WY, for petitioner.
*Camille M. Collett,* Department of Justice, Washington, D.C., for respondent.

### ORDER DENYING PETITIONER'S MOTION FOR RECONSIDERATION[1]

On September 4, 2014, Kavita Desai ("petitioner"), filed a petitioner for compensation under the National Vaccine Injury Compensation Program.[2]  Petitioner alleged that she suffered a right shoulder injury related to vaccine administration ("SIRVA") as a result of receiving an influenza ("flu) vaccination on November 15, 2012.  Petition at Preamble. (ECF No. 1).

On July 30, 2020, I issued a ruling on entitlement, granting compensation to petitioner. *Desai v. Sec'y of Health & Human Servs.,* No. 14-811, 2020 WL 4919777 (Fed. Cl. Spec. Mstr. July 30, 2020).  The entitlement ruling included a summary of the procedural history, summary

---

[1] Pursuant to the E-Government Act of 2002, *see* 44 U.S.C. § 3501 note (2012), because this opinion contains a reasoned explanation for the action in this case, I am required to post it on the website of the United States Court of Federal Claims.  The court's website is at http://www.uscfc.uscourts.gov/aggregator/sources/7.  **This means the opinion will be available to anyone with access to the Internet.**  Before the opinion is posted on the court's website, each party has 14 days to file a motion requesting redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy."  Vaccine Rule 18(b).  An objecting party must provide the court with a proposed redacted version of the opinion.  *Id.*  **If neither party files a motion for redaction within 14 days, the opinion will be posted on the court's website without any changes.**  *Id.*

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended 42 U.S.C. §§ 300aa-10 to 34 (2012) (hereinafter "Vaccine Act" or "the Act").  Hereinafter, individual section references will be to 42 U.S.C. § 300aa of the Act.

of medical facts and petitioner's submission of an expert report from Dr. Marko Bodor and respondent's submission of expert reports and testimony from Dr. David Ring.  *Desai,* 2020 WL 4919777.

On August 10, 2020, I issued a ruling on damages, awarding petitioner $125,000.00 for past pain and suffering; $1,772.60 for past unreimbursable medical expenses; $1,000.00 per year for petitioner's life expectancy of thirty years for future pain and suffering; and $60,886.60 for life care plan items.  Ruling on Damages (issued on August 10, 2020).  In this ruling, I summarized the facts relevant to petitioner's damages, petitioner's submissions and testimony and respondent's submissions related to damages.  *Id.* at 2-4.

I concluded that petitioner was entitled to an award of past pain and suffering, based on petitioner's testimony, a review of the objective medical evidence, the parties' briefs, as well, as my own knowledge and experience in evaluating SIRVA claims.  *Id.* at 9.  I also concluded that petitioner was entitled to an award of future pain and suffering of $1,000.00 per year for her life expectancy of 30 years, based on her birthdate. Ruling on Damages at 12.  Petitioner had cited to two SIRVA cases, *Anthony v. Sec'y of Health & Human Servs.,* and *Schettl v. Sec'y of Health & Human Servs.*, to support her position that she should receive the full $250,000.00 award for pain and suffering.  *Id.* at 11.  In her post-hearing reply brief, petitioner cited to *Binette v. Sec'y of Health & Human Servs.,* and *Young v. Sec'y of Health & Human Servs.,* as SIRVA cases where future pain and suffering was awarded upon a decision of special master.  Pet. Post-Hearing Reply at 3.  Petitioner argued that *Binette* and *Young* provide "little guidance because there is no factual background to allow for a comparison of specific circumstances."  *Id.* at 3.[3]  Petitioner then identified *Anthony v. Sec'y of Health & Human Servs.,* to support her argument that awards of $250,000.00 for a SIRVA injury are not "unusual."  *Id.*

In the ruling, I differentiated *Anthony* from the petitioner's case, noting that the petitioner in *Anthony* had surgical intervention for his post-vaccination shoulder injury. I also observed that the *Schettl* case was a complex regional pain syndrome case and not a SIRVA.  Ruling on Damages at 12.  Instead, I compared petitioner's injury, resulting pain, duration of injury and interventions to two other SIRVA cases with reasoned decisions, *Dhanoa* and *Binette* where awards for past and future pain and suffering awards were made. Ruling on Damages at 12.  I concluded that because petitioner had made great progress in improving her range of motion and reducing her pain, but still had some mobility limitations and the injury was to her dominant arm, she was entitled to some future pain and suffering, but not at the amount that petitioner requested.  *Id.* at 12.

I ordered the parties to reduce future damages to net present value and file a status report within thirty days to provide the appropriate figure in order for a decision on damages to be entered.  *Id.* at 16.  No judgment was entered.

---

[3] In her post-hearing brief, petitioner stated that this case "provide[d] little guidance because there is no factual background to allow for a comparison of specific circumstances."  Pet. Reply at 3.  However, Chief Special Master Dorsey did provide the factual basis for her award of pain and suffering in a Ruling on Damages, which petitioner did not cite.

On August 19, 2020, petitioner filed a motion for reconsideration of the ruling on damages.  Petitioner's Motion for Reconsideration ("Pet. Mot.") (ECF No. 150).  Petitioner requested that the court "reconsider its Ruling [on] August 10, 2020," and reiterated the request for "$250,000.00 for the almost eight years of past pain and suffering [petitioner] has already endured," and, "If this Special Master awards an amount less than $250,000.00 for past pain and suffering, then [petitioner] asks that this Special Master to award at least $25,000.00 per year for future pain and suffering."  Pet. Mot. at 10.  Petitioner did not file any additional evidence for consideration to accompany this motion, but instead cited to other cases both in and outside the Vaccine Program which will be discussed below.

Petitioner's motion was granted to the extent that original decision was withdrawn for further review.  A ruling determining whether petitioner is entitled to any additional relief (a substantive change in outcome) was deferred to allow respondent to file a response.  Order on Motion, filed Aug. 20, 2020 (ECF No. 151).  On September 3, 2020, respondent filed a response to petitioner's motion.  Respondent's Response (Resp. Response) (ECF No. 153).  Accompanying respondent's response was a summary of 55 cases involving shoulder injuries and awards of pain and suffering.  Resp. Response, Appendix A (ECF No. 154).  Petitioner did not file a reply.

The parties' additional arguments have been considered.  For the reasons discussed below, petitioner's motion for reconsideration is **DENIED.**

## I.      Legal Standard for Reconsideration

Vaccine Rule 10(e) governs motions for reconsideration of a special master's decision.  It provides that "[e]ither party may file a motion for reconsideration of the special master's decision within 21 days after the issuance of the decision…." Vaccine Rule 10(e)(1).  Within the Vaccine Program, special masters have the discretion to grant a motion for reconsideration if to do so would be in the "interest of justice." Vaccine Rule 10(e)(3); *see also Hall v. Sec'y of Health & Human Servs.*, 93 Fed. Cl. 239, 251 (2010), *aff'd* 640 F.3d 1351 (Fed. Cir. 2011).

A party seeking reconsideration "must support the motion by a showing of extraordinary circumstances which justify relief."  *Fru-Con Constr. Corp. v. United States*, 44 Fed. Cl. 298, 300 (1999).  "A court may grant such a motion when the movant shows '(1) that an intervening change in the controlling law has occurred; (2) that previously unavailable evidence is now available; or (3) that the motion is necessary to prevent manifest injustice.'" *System Fuels, Inc. v. United States*, 79 Fed. Cl. 182, 184 (2007), quoting *Amber Resources Co. v. United States*, 78 Fed. Cl. 508, 514 (2007).  Many decisions state that the standard for reconsideration is congruent with the "manifest injustice" standard utilized under Rule 59(a) of the Rules of the Court of Federal Claims, which has been defined to be unfairness that is "clearly apparent or obvious." *Amex Inc. v. United States,* 52 Fed. Cl. 555, 557 (2002); *see also See Krakow v. Sec'y of Health & Human Servs.*, No. 03-632V, 2010 WL 5572074, at *3 (Fed. Cl. Spec. Mstr. Jan. 10, 2011) (granting reconsideration of motion to dismiss case for failure to prosecute).  A motion for reconsideration "is not intended to give an unhappy litigant an additional chance to sway the court." *Prati v. United States*, 82 Fed. Cl. 373, 376 (2008) (quoting *Fru-Con Constr. Corp.*, 44 Fed. Cl. at 300); *see also Hall v. Sec'y of Health & Human Servs.,* 93 Fed. Cl. 239, 251 (2010).

As noted above, Special Masters have the discretion to grant a motion for reconsideration if to do so would be in the "interest of justice." Vaccine Rule 10(e)(3). There is little guidance interpreting Vaccine Rule 10(e)(3) beyond the conclusion that is within the special master's discretion to decide what constitutes the "interest of justice" in a given case. *See Krakow v. Sec'y of Health & Human Servs.,* 2010 WL 5572074 at *3; *Kottenstette v. Sec'y of Health & Human Servs.,* No. 15-1016, 2020 WL 3579995 (Fed. Cl. Spec. Mstr. June 2, 2020).

## II.    Parties' Arguments

### a.  Petitioner's Motion

Petitioner, without citing to Vaccine Rule 10(e) or RCFC 59(a), asserts that "…the record as a whole supports a greater pain and suffering award and requests this Court reconsider its decision in light of the record as a whole and non-program tort awards." Pet. Mot. at 1.

Petitioner argues that the award of $125,000.00 for past pain and suffering was too low and that she should be awarded $250,000.00 for past pain and suffering. Pet. Mot. at 1. Petitioner stated that "for the first few years the pain was severe and the loss of range of motion made activities of daily living almost impossible. She continues to suffer limited range of motion and pain, especially at certain times of the year." *Id.* Petitioner stated, "Under the circumstances, there is nothing generous about this Court's past and future pain and suffering awards." *Id.* at 2.

Petitioner correctly acknowledges that I accepted the approach Judge Merow outlined in *Graves* in that I evaluated her pain and suffering damages without regard to the statutory cap, as part of the appropriate legal analysis for awarding compensation for pain and suffering. Pet. Mot. at 2.[4] Petitioner also acknowledges that assessing damages for pain and suffering is inherently subjective and endorsed the factors to be considered when determining an award for pain and suffering outlined in *I.D. v. Sec'y of Health & Human Servs.,* No. 04-1593, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013); Pet. Mot. at 4.

However, petitioner argues that looking at Vaccine Program awards for guidance generally represents an undervaluation of pain and suffering damages. Pet. Mot. at 4. Petitioner states that, "When looking at SPU settlement numbers, this Court was looking at artificially low numbers. Settlement figures do *not* represent fair and just compensation for injuries." *Id.* Petitioner asserted, "By looking at settlement figures, this Special Master is doing what Judge Merow counseled against in *Graves.* This Special Master is looking at a Vaccine Program continuum, one established in large measure by Respondent." *Id.* Petitioner stated, "Cases must

---

[4] However, in the Vaccine Program's subsequent history, special masters have of course not been bound by *Graves,* however, they have found it persuasive. *See Hanlon v. Sec'y of Health & Human Servs.,* 40 Fed. Cl. 625, 630 (1998) (decisions of special masters and the U.S. Court of Federal Claims constitute persuasive but not binding authority); *see also Reed v. Sec'y of Health & Human Servs.,* No. 16-1670V, 2019 WL 1222925, at * 12 (Fed. Cl. Spec. Mstr. Feb. 1, 2019) (it must be stressed that pain and suffering is not based on a continuum"); *Selling v. Sec'y of Health & Human Servs.,* No. 166-588V, 2019 WL 3425224, at *5 (Fed. Cl. Spec. Mstr. May 2, 2019) (Pain and suffering is not, however, determined based on a continuum); *W.B. v. Sec'y of Health & Human Servs.,* No. 18-1364V, 2020 WL 5509686, at *3 (Fed. Cl. Spec. Mstr. Aug. 7, 2020).

be reviewed based on their individual facts and circumstances, leading to unique damage awards based on justness, fairness and generosity, not respondent's continuum." *Id.*

Petitioner argues that "The specific cases looked at by this Special Master do not support this low pain and suffering award." Pet. Mot. at 5. Petitioner specifically takes issue with discussion of *Cooper v. Sec'y of Health & Human Servs.,* in the ruling on damages. Pet. Mot. at 6. Petitioner states that, "In other words, Special Master Dorsey felt that $110,000.00 was an appropriate amount for eight months of pain and a little residual pain. [Petitioner] has suffered almost eight years of pain and loss of range of motion at this point. The $125,000.00 awarded in this Court's Ruling grossly undervalues [petitioner's] injury compared to petitioner in *Cooper."* *Id.* Interestingly, petitioner did not discuss *Binette v. Sec'y of Health & Human Servs.,* which was discussed in both the Ruling on Damages and in petitioner's post-hearing reply brief. *See* Ruling on Damages at 12 (citing *Binette v. Sec'y of Health & Human Servs.,* No. 16-731, 2019 WL 1552620 (Fed. Cl. Spec. Mstr. March 20, 2019); Pet. Post-Hearing Reply at 3.

Petitioner offers cases outside the program, which she asserts, "provide a discussion of reasonable compensation for a shoulder injury." Pet. Mot. at 6. Petitioner cites to *Garrow v. Rosettie Assoc., LLC,* where a plaintiff diagnosed with thoracic outlet syndrome and scapula thoracic disassociation and found to have a permanent and significantly limited use of her right arm and shoulder was awarded $50,000.00 in past pain and suffering and $450,00.00 in future pain and suffering. *Id.* at 6; *Garrow v. Rosettie Assocs. LLC,* 875 N.Y.S.2d 307, 308-09, 2009 WL 537065 at *1126-27 (N.Y.A.D. 3 Dept. March 5, 2009). She argues that *Griffin v. Univ. of Pittsburgh Med. Center-Braddock Hosp.*, is also instructive because a jury awarded $2,277,131.00 to a plaintiff who suffered a severe shoulder fracture in the course of an unrelated surgical procedure and then needed four corrective surgeries to address the problem. *Griffin v. Univ. of Pittsburgh Med. Center-Braddock Hosp.*,950 A.2d 996, 2008 PA Super. Ct. 104 (2008) (*rev'd on other grounds).* Petitioner also referenced *Dawes v. Kinnett,* a medical malpractice suit in which plaintiff was permanently damaged during a rotator cuff repair surgery, needed additional corrective surgeries and was awarded $400,00.00 in general damages. *Dawes v. Kinnett,* 779 So.2d 978 (La. App. 4 Cir. 2001). Finally, petitioner cites *Pollak v. Goldman*, another medical malpractice claim where the plaintiff underwent three corrective surgeries but still had an "obvious….tear" in the infraspinatus tendon and was awarded $57,000.00 in past pain and suffering and $70,000.00 in future pain and suffering. *Pollak v. Goldman*, 2008 WL 5452132 (Cal. App. 2 Dist., 2008). While these cases present interesting factual scenarios and, given that they were cited in support of petitioner's argument, not surprisingly large awards, they are distinguishable from the petitioner's case. Petitioner does not indicate why these cases should represent better estimates of pain and suffering than that reached in this case other than that they were verdicts in shoulder injury cases rendered outside of the Vaccine Program.

Petitioner then repeats her request for a full award of future pain and suffering if she is not awarded the maximum amount for past pain and suffering. Pet. Mot. at 9. She states, "The permanent injury to her right, dominant arm will have to be a consideration in every decision she makes, every day, for the rest of her life." *Id.* Petitioner states that she cited to *Anthony v. Sec'y of Health & Human Servs.,* as the "appropriate guide" for future pain and suffering. *Anthony v. Sec'y of Health & Human Servs.,* No. 14-680V, 2016 WL 7733084 (Fed. Cl. Spec. Mstr. Dec. 15, 2016) (Decision Awarding Attorneys' Fees and Costs). Petitioner argues that the

undersigned found *Anthony* not applicable because the petitioner in *Anthony* underwent an unsuccessful surgery.  Pet. Mot. at 10.  Petitioner argues that surgical intervention in *Anthony* was only a factor considered by the special master and the more relevant factors are a petitioner's ongoing pain, ongoing limitation of mobility and general impact on daily living.  *Id.*  Petitioner concludes, "Given the severity of her injury, $25,000.00 per year for future pain and suffering is a just award."  *Id.*  Petitioner concludes by asking me to reconsider the Ruling on Damages and requests the maximum award amount for pain and suffering.  *Id.* at 10.

### b.  Respondent's Response

Respondent first argues that petitioner's motion for reconsideration is premature.  Resp. Response at 3.  Respondent stated that the Ruling on Damages was a preliminary ruling and not a final decision.  *Id.*

Substantively, respondent also argues that petitioner's motion is legally deficient and has failed to meet the legal standards for a motion for reconsideration.  *Id.* at 4.  Respondent states, "Petitioner simply disagrees with the special master's discretionary award of pain and suffering in this case."  *Id.* at 4.

Then respondent addresses petitioner's arguments about the award of pain and suffering in the damages ruling.  Respondent states that *Graves* calls for an individualized assessment of damages based on the specific facts of a petitioner's case, " 'which is the analysis that this Court performed in its Ruling on Damages.' "  *Id.* at 4 (citing *Graves v. Sec'y of Health & Human Servs.,* 109 Fed. Cl. 579 (2013)).  Respondent avers that the plain text of § 300aa-15(a)(4) contemplates that at least *some* petitioners would be awarded less than the statutory minimum and this logic is consistent with the legislative history of the Vaccine Act.  *Id.* at 5-8.  Further, respondent stated, "Congress arrived at the $250,000 limit as an amount that was sufficient to induce claimants who often had devastating injuries, to accept it in lieu of pursuing civil remedies and also to provide the special maters latitude to compensate injuries ranging from relatively minor to very serious."  *Id.* at 7-8.

Respondent states that special masters employed objective factors including: 1) the ability of the injured individual to understand the injury; 2) the severity of the injury; and 3) the potential number of years the individual is subjected to the injury.  *Id.* at 10 (citing *Hocraffer v. Sec'y of Health & Human Servs.,* 2007 WL 914914 * 4.  Additionally, respondent also acknowledges that special masters may draw on their own experience with similar program cases as well as their overall judgment when making an award for pain and suffering.  *Id.* at 10.

However, respondent agreed with petitioner that cases outside the Vaccine program may be relevant to determining pain and suffering damages.  *Id.* at 12.  But, according to the respondent, outside cases demonstrate that the Vaccine Program's pain and suffering awards for straight shoulder injuries are substantially higher than what is typically awarded in the traditional tort system.  *Id.* at 12-13.  Respondent argues that the cases cited by petitioner "are not representative nor are their facts relevant to the instant case."  *Id.* at 13.  Instead, respondent submitted an appendix of fifty-five cases involving "shoulder impingement" and "shoulder bursitis" from the civil tort system which were resolved by either jury verdict, arbitration or

settlement over the past five years.  Resp. Response Appendix A (ECF No. 154).  Respondent states that the average pain and suffering award in the cases identified in the appendix is $33,089.93.  Resp. Response at 13.  Respondent argued that, "Nearly seventy-five percent of the pain and suffering awards…are for $30,000 or less, several of which went to plaintiffs who underwent surgery, and nearly half of the awards are for $10,00 or less.  All of the awards over $30,000.00 involve concurrent knee or back injuries."  *Id.* at 13.  Respondent stated that, "this review of awards for comparable injuries suggests that the Vaccine Program's pain and suffering awards for straight shoulder injuries are substantially higher than what is typically awarded in the traditional tort system."  *Id.*

Respondent concludes, "Notwithstanding which case law is used in the award of pain and suffering, the award is discretionary, and the special master has exercised his discretion in awarding the amount at issue here."  *Id.* at 13.

## III.    Discussion

Vaccine Rule 10(e) typically applies only to final decisions and is not available as a means to reopen entitlement.  *See* Resp. Post-Hearing Brief at 2.  However, it has also been observed that special masters have discretion in revisiting entitlement decisions.  *See e.g. Hanlon v. Sec'y of Health & Human Servs.,* 40 Fed. Cl. 625, 629 (Fed. Cl. 1998) (stating that "[w]hether or not to reconsider, prior to issuance of a final decision, an announced finding of entitlement in a vaccine case is left to the discretion of the special master.").  A final decision on damages awaited only on the reduction to present value of future damages, essentially a ministerial function, given that the Ruling on Damages set forth the variables to be used, I determined that that is appropriate to address the substantive issues raised by petitioner's motion.

However, I agree with the respondent that the petitioner's motion for reconsideration has failed to meet the legal standard for a motion for reconsideration.  Instead, petitioner's motion reflects simply a disagreement with the amount of the pain and suffering award made in the Ruling on Damages, which is an insufficient basis for reconsideration.  As respondent correctly observed, the petitioner has not asserted that any intervening change in the controlling law has occurred, but "simply disagrees with the special master's discretionary award of pain and suffering in this case."  Resp. Reply at 4.  Additionally, petitioner has not introduced any new evidence that was previously unavailable at the time of the decision.  Finally, there is nothing manifestly unfair about the award of $125,000.00 in past pain and suffering and $1,000.00 per year for life in future pain and suffering that is clearly or apparently obvious on the facts of this case.

In her motion, petitioner states that the award of $125,000.00 in past pain and suffering and $1,000.00 per year for life is "nothing generous."  Pet. Mot. at 1.  However, petitioner acknowledged that the award for past and future pain and suffering is discretionary and is "inherently subjective."  Pet. Mot. at 4; *see also I.D. v. Sec'y of Health & Human Servs.,* No. 011-1593, 2013 WL 22448125, at *9 (Fed. Cl. Spec. Mstr. Apr. 19, 2013).  As I articulated in the Ruling on Damages, factors to be considered in determining an award of pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.  Ruling on Damages at 8; *see also I.D.*, 2013 WL 22448125, at *9.

Petitioner's main complaint appears to be that I only evaluated her claim by looking at past pain and suffering awards *within* the Vaccine program, which led to an "artificially low," award.  Pet. Mot. at 5.  Petitioner argued that SIRVA awards of compensation, especially those resolved in the SPU, are artificially low because the respondent is unwilling to negotiate once the government has determined an amount reasonable.  Pet. Mot. at 4.  Thus, petitioners are put in a precarious financial situation where they can either take the amount offered or wait longer until a damages hearing can be held.  *Id.* at 5.  Therefore, according to petitioner, the cases internal to the Vaccine Program establish a continuum for pain and suffering and that I assessed petitioner's pain and suffering along that continuum, in violation of the standard established by Judge Merow in *Graves v. Sec'y of Health & Human Services.*  Pet. Mot. at 5.

Petitioner's assertion fails to recognize that *she* only cited to cases internal to the program in her post-hearing briefs and only in her motion for reconsideration does she submit cases outside the program as examples of pain and suffering awards that exceed the statutory cap.  *See* Pet. Post-Hearing Brief (ECF No. 142); Pet. Post-Hearing Reply (ECF No. 147).  As with all elements of damages, the petitioner carries the burden of proof to establish his or her pain and suffering.  *See, e.g. Brewer v. Sec'y of Health & Human Servs.,* No. 93-0092V, 1996 WL 147722, at \*22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996); *Shapiro v. Sec'y of Health & Human Servs.,* 101 Fed. Cl. 532, 537-38 (2011).  Petitioners seeking an assessment of their pain and suffering must submit supporting evidence, which can include citations to past *reasoned* opinions that he or she believes to be helpful comparisons to his or her own case.  It is not incumbent upon the Court to research every civil tort case involving shoulder injuries and compare those cases to the case it is currently considering.  In this case, petitioner made no reference to cases outside the program in her case-in-chief, and only through her motion for reconsideration does she seek these cases to be considered with little explanation as to why these cases are comparable to her own injury.

I do not find the submissions of cases outside of the Vaccine Program as references for the valuation of SIRVA cases to be particularly helpful for several reasons.  Approximately ninety per cent (90%) of personal injury cases are settled and rarely appear in reports of verdicts.  The vast majority of jury verdicts are not appealed and thus are not discussed in appellate opinions such as those cited by petitioner.  And as noted above, the cases cited by petitioner here are readily distinguishable in terms of severity.  Each case reported injuries, disabilities and surgeries that appeared to far exceed the comparable injury at issue in this case.  Tort claims also involve considerations of fault which may serve to increase or decrease the awards at issue.

On the other hand, the respondent's summaries of fifty-five (55) selected cases involving shoulder injury are not very helpful either.  Each of the short case summaries, nearly all of which arose from automobile accidents, contains a "JVR" number.  JVR stands for Jury Verdict

8

Research which is a voluntary reporting service with which I am familiar.[5,6]  It has some of the same limitations as the cases cited by petitioner, in that it contains reports of verdicts by juries or arbitrators and not the larger data set of settlements.  Additionally, the JVR data set also suffers from its sourcing in that it tends to contain reports from plaintiff's lawyers anxious to publicize large verdicts and defense lawyers wanting to show particularly small ones.  Given the brief descriptions[7] of seemingly significant injuries preceding the awards, which as respondent noted were in the majority under $10,000.00, the low verdicts appear likely to have come from an insurance defense source.  They appear to greatly undervalue the described injuries and likely involved considerations not at issue in vaccine cases.

Further, the amounts of civil verdicts are greatly affected by the geographic location of the trial.  Verdicts vary significantly from county to county within a given state and even more so from state to state.  In contrast, the Vaccine Program has national jurisdiction and the assessment of a petitioner's damages, particularly pain and suffering, is based on the evidence submitted without regard to the petitioner's location.

Nevertheless, special masters may consider pain and suffering awards, especially for similar injuries from both *inside* and outside the Vaccine program to aid in the resolution of the appropriate amount of compensation for pain and suffering.  *See e.g. Doe 34 v. Sec'y of Health & Human Servs,* 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing  improper in the chief special  master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case).

I agree that looking at cases resolved by proffer where respondent has conceded entitlement, are often unhelpful as a point of comparison when the underlying facts are not available to a non-party.  Which is precisely why I considered *reasoned* decisions that awarded both past and future pain and suffering awards for SIRVA injuries.  *See* Ruling on Damages at 11-12.  I am not the only special master that holds this view.  In *Blanco v. Sec'y of Health & Human Servs.,* Chief Special Master Corcoran stated, "I find that awards issued *within* the Program are most persuasive.  It is important to bear in mind the policy purposes of the Program-that is no-fault and is intended to be generous in many regards, resulting in slightly different

---

[5] In my prior career in civil litigation, I subscribed to this service for a period of time and was able to assess its usefulness.  For the reasons described above, I found this service to be a source of anecdotal information but an unreliable indicator of case values.

[6] Thomson Reuters has acquired JVR.  Thomson Reuters also owns the legal research database Westlaw.  Respondent used the Westlaw Jury Verdicts and Settlements Database, which houses the Jury Verdict Research data, to prepare its Appendix A of cases with JVR numbers.

[7] For example, for case 4, in which the plaintiff was awarded $1,500, the summary is: "Car accident, injury to passenger. Type II glenoid labral tear, rotator cuff tear and bursitis of left shoulder which required surgery and resulted in permanent impairment, as well as cervical, rotator, and lumbar strains."  Resp. Post-Hearing Brief, Appendix A at 2.  For case 7, in which the plaintiff was awarded $3,000, the summary is: "Car accident.  Cervical disc protrusion, acquired loss of cervical lordosis, concussion leading to post-concussion syndrome, shoulder AC joint separation with impingement, and cervical, thoracic, and lumbar strains."  *Id.*  For case 4, in which the plaintiff was awarded $4,000, the summary is: "Car accident.  A proximal humerus fracture, left shoulder impingement, and cervical disc herniations at C4-C7".  *Id.* at 3.

scale." *Blanco,* No. 18-1361V, 2020 WL 4523473, at *2 (Fed. Cl. Spec. Mstr. July 6, 2020). Reasoned opinions in the Vaccine program provide significantly more detail about the duration, severity and treatment of an injury than cases resolved by proffer within the Vaccine program or even the outside cases referenced to by both parties in this case.  Additionally, all SIRVAs occur by the same mechanism and injuries generally resemble one another.  The main difference is the severity and duration of the injury and how that injury affects individual petitioners.

There are increasingly more reasoned opinions determining the appropriate amount of compensation for pain and suffering for SIRVA cases within the Vaccine program.  *See Wallace v. Sec'y of Health & Human Servs.,* 16-1472, 2019 WL 4458393 (Fed. Cl. Spec. Mstr. June 27, 2019); *Wilt v. Sec'y of Health & Human Servs.,* No. 18-446, 2020 WL 1490757 (Fed. Cl. Spec. Mstr. Feb. 24, 2020); *Smallwood v. Sec'y of Health & Human Servs.,* No. 18-291V, 2020 WL 295495 (Fed. Cl. Spec. Mstr. Apr. 29, 2020); *Kuhn v. Sec'y of Health & Human Servs.,* No. 18-91V, 2020 WL 3750994 (Fed. Cl. Spec. Mstr. June 5, 2020); *Meyers v. Sec'y of Health & Human Servs.,* No. 18-909V, 2020 WL 3755335 (Fed. Cl. Spec. Mstr. June, 5, 2020); *Murray v. Sec'y of Health & Human Servs.,* No. 18-534V, 2020 WL 4522483 (Fed. Cl. Spec. Mstr. July 6, 2020); *Blanco v. Sec'y of Health & Human Servs.,* No. 18-1361, 2020 WL 4523473 (Fed. Cl. Spec. Mstr. July, 6, 2020); *Magee v. Sec'y of Health & Human Servs.,* No. 18-185V, 2020 WL 5031971 (Fed. Cl. Spec. Mstr. July, 21, 2020); *Robertson v. Sec'y of Health & Human Servs.,* No. 19-90V, 2020 WL 5512542 (Fed. Cl. Spec. Mstr. Aug. 7, 2020); *Tumolo v. Sec'y of Health & Human Servs.,* No. 16-343, 2020 WL 6279711 (Fed. Cl. Spec. Mstr. Oct. 1, 2020); *Gunter v. Sec'y of Health & Human Servs.,* No. 17-1941, 2020 WL 6622141 (Fed. Cl. Spec. Mstr. Oct. 13, 2020).  There are also increasingly more SIRVA cases where special masters are awarding future pain and suffering damages, in addition to past pain and suffering awards.  *See Dawson-Savard v. Sec'y of Health & Human Servs.,* No. 17-1238V, 2020 WL 4719291 (Fed. Cl. Spec. Mstr. July 14, 2020); *Dhanoa v. Sec'y of Health & Human Servs.,* No. 15-1011V, 2018 WL 1221922 (Fed. Cl. Spec. Mstr. Feb. 1, 2018); *Binette v. Sec'y of Health & Human Servs.,* No. 16-731V, 2019 WL 1552620 (Fed. Cl. Spec. Mstr. Mar. 20, 2019); *Schoonover v. Sec'y of Health & Human Servs.,* No. 16-1324, 2020 WL 5351341 (Fed. Cl. Spec. Mstr. Aug. 5, 2020); and *Curri v. Sec'y of Health & Human Servs.,* No. 17-4332V, 2018 WL 6273562 (Fed. Cl. Spec. Mstr. Oct. 31, 2018); and *Hooper v. Sec'y of Health & Human Servs.,* No. 17-12V, 2019 WL 2442880 (Fed. Cl. Spec. Mstr. Apr. 3, 2019).

Regrettably, counsel for petitioner repeatedly cites to the decision in *Anthony* in which the sum of $248,540.00 in pain and suffering was awarded following a proffer.  *Anthony,* 2016 WL 1169147 (Fed. Cl. Spec. Mstr. Mar. 2, 2016) (awarding damages based on a joint proffer). As counsel in this case was also counsel in *Anthony,* he is privy to facts in the case that contributed to the large award, but these facts are not available to non-parties.  As other special masters and I have observed, citing to *Anthony* as a comparable case to support a claim for the maximum pain and suffering award has its limitations and appears only to be useful to say that in at least one SIRVA case $250,000 in past and future pain and suffering was awarded.  *See Goldman v. Sec'y of Health & Human Servs.,* No. 16-1523V, 2020 WL 6955394, at n.6 (Fed. Cl. Spec. Mstr. Nov. 2, 2020). n. 6; *see also Reed v. Sec'y of Health & Human Servs.,* No. 16-1670, 2019 WL1222925, at n. 14 (Special Master Dorsey observed that the decision issued in *Anthony* did not address the factors that contributed to the special master's  award.); and *see also Cooper v. Sec'y of Health & Human Servs.,* No. 16-1387, 2018 WL 6288181, at n. 35 (Fed. Cl. Spec.

Mstr. Nov. 7, 2018) (observing that the factors that contributed to the award in *Anthony* was not disclosed because the special master in *Anthony* ruled from the bench following a damages hearing.).  Importantly, *Anthony* was a SIRVA case where the government conceded entitlement in a Rule 4(c) report and damages were resolved by a proffer after a damages hearing.  *See Anthony v. Sec'y of Health & Human Servs.,* No. 14-6680V, 2014 WL 6480427 (Fed. Cl. Spec. Mstr. Oct. 28, 2014) and *Anthony v. Sec'y of Health & Human Servs.,* 2016 WL 1169147 (Fed. Cl. Spec. Mstr. Mar. 2, 2016).  Additionally, the proffer decision in *Anthony* only provides a lump sum award for pain and suffering and therefore, it is difficult to discern what Special Master Moran awarded in past pain and suffering and what was awarded in future pain and suffering.  *See Anthony,* 2016 WL 1169147, at *1 (awarding $248,540.00 in pain and suffering). Thus, it is difficult to assess the relevance of the *Anthony* case to the case at hand aside from the fact of the amount awarded, because the individual facts and circumstances of the *Anthony* case are not discussed in the final damages decision, nor in the ruling on entitlement.  The only fact relating to the petitioner's SIRVA in *Anthony,* that he had surgery, was provided in Special Master Moran's decision on attorneys' fees and costs.  *See Anthony,* 2016 WL 77330084 (Fed. Cl. Spec. Mstr. Dec. 15, 2016).

Lastly, as I explained in the Ruling on Damages, the award of $125,000.00 in past pain and suffering was consistent with other SIRVA awards where the facts were relatively similar to the facts in this case.  Ruling on Damages at 11.  I explained that the petitioner in *Cooper* was awarded $110,000.00 in past pain and suffering because Special Master Dorsey found the petitioner had suffered severe to moderate pain following the SIRVA, followed by a longer period of residual pain and reduced range of motion with no surgical intervention.  *Id.* Based on the description of petitioner's pain, the extensive physical therapy she underwent, receipt of a steroid injection, but also her progress in regaining mobility in her right shoulder and the lower residual pain she described, an award of $110,000.00 was too low, therefore I awarded petitioner $125,000.00 in past pain and suffering.  *Id.* at 11.

In assessing an award for petitioner's future pain and suffering, I explained that the facts and circumstances in petitioner's case, were closer in comparison to the petitioner in *Binette* than in *Dhanoa.*  *Id.* at 12.  In *Dhanoa,* the petitioner was awarded $85,000.00 for past pain and suffering and $10,000.00 for one year of future pain and suffering.  *Dhanoa,* 2018 WL 1221922, at *7.  Special Master Dorsey found that the petitioner in *Dhanoa* had significant relief from steroid injections and had reduced pain level and improved mobility after ten physical therapy appointments.  *Dhanao¸* at *6.  In *Binette*, the petitioner was awarded $130,000.00 in past pain and suffering and $1,000.00 per year for her life expectancy in future pain and suffering, reduced to present value.  Ruling on Damages at 11; *Binette v. Sec'y of Health & Human Servs.,* No. 16-713, 2019 WL 1552620 (Fed. Cl. Spec. Mstr. Mar. 20, 2019).  Special Master Dorsey observed that petitioner suffered moderate to severe pain for two years following the vaccination and then an additional fourteen months of "increased level of pain."  *Binette,* 2019 WL 1552620 at *14. Special Master Dorsey also acknowledged that the petitioner in *Binette* had five cortisone injections that only provided temporary relief and the petitioner's pain level never dropped below a five.  *Id.* at *13.

Although the Ruling on Damages in this case made reference to several similar cases from the Vaccine Program awarding damages for SIRVA injuries, I consider the reference to

cases useful, but not determinative to the value awarded in pain and suffering in this case, or any other.  As I articulated in the Ruling on damages, factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.  *I.D.,* 2013 WL 2448125, at 9; Ruling on Damages at 8.  Impairment of function and loss of activities, including any effect on a petitioner's lifestyle are also considered.  The Ruling on Damages acknowledged and documented the history of petitioner's pain and suffering, the treatments she pursued, including extensive physical therapy in the U.S. and in India, and the impair of function in her right shoulder.

The Ruling on Damages states, "Petitioner pursued a very extensive course of physical therapy over a period of approximately 3.5 years and continues to consistently do a course of home exercises as prescribed by her physicians."  Ruling on Damages at 10.  However, the record made clear that petitioner's pain decreased over time and her mobility increased.  *Id.* For example, less than one year after the vaccination, on August 16, 2013, petitioner reported she had much improved pain in her right shoulder and indicated that her pain level was a 2 out of 10 while at rest.  Pet. Ex. 2 at 47-9; Ruling on Damages at 4.  On October 11, 2013, petitioner reported her pain level at one out of ten.  Pet. Ex. 2 at 52; Ruling on Damages at 4.  On May 22, 2014, less than two years after her vaccine-related injury, petitioner expressed that she had a "significant reduction in pain and improved range of motion, strength and mobility." *See* Pet. Ex. 7 at 25; Ruling on Damages at 4.  Petitioner testified that by 2017 she had a dull continuous, aching pain and some sleep disturbance, but it was not as severe as in 2013 and 2014.  Tr. 120; Ruling on Damages at 5.  In May 2018, petitioner again reported her pain at a 2 out of 10 to orthopedist, Dr. Gregory Difelice.  Pet. Ex. 27 at 5; Ruling on Damages at 5.  Dr. DiFelice observed that since he last saw petitioner in 2013, she had "noted improvement with range of motion but still struggles with symptoms with damp and cold weather."  *Id.* at 1. He observed that she was able to abduct her right arm to 160 degrees (full is 180 degrees), externally rotate her to 60 degrees (full rotation at 90 degrees), and actively internally rotate her arm to T-12 " with good kinematics."  Pet. Ex. 27 at 2; *Id.* at 5.  Dr. DiFelice recommended petitioner continue at home exercises and treat with over the counter medication for pain control.  *Id.*

Each shoulder case is different in degree and extent of injury.  In this case the petitioner continued to have symptoms particularly during the rainy season in India, and had some limitation in flexion, external and internal rotation of her dominant arm.  Petitioner did not undergo surgery and had only one steroid injection but did pursue extensive physical therapy.  Notably, she had a significant reduction in pain levels from the first-year post vaccination and was able to improve her range of motion.  Petitioner testified that she had some increased pain level with some activities of daily living, but she can compensate with devices like a shopping cart and because of her medical education she is able to continue her profession as she chooses.  While the award of $125,000.00 in past pain and suffering and $1,000.00 per year for her 30-year life expectancy for future pain and suffering is somewhat consistent with other SIRVA cases, my subjective determination of the value of pain and suffering in this case was based on the evaluation of the evidence in this case, including the medical records, the testimony, treatments involved, duration of petitioner's injury, description of her pain and whether the injury was to her dominant arm.

12

13

Petitioner has failed to demonstrate any basis for granting reconsideration in this case. Petitioner has not identified an intervening change in the law or any new evidence that was unavailable when I issued the Ruling on Damages.  Denial of petitioner's motion for reconsideration does not result in a manifest injustice.  Accordingly, petitioner's motion is hereby **DENIED.**

**IT IS SO ORDERED.**

**s/Thomas L. Gowen**
Thomas L. Gowen
Special Master